UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:14-CR-828 |
| | § | |
| ERIK OMAR HERNANDEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER GRANTING DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE

Before the Court are Defendants Erik Omar Hernandez (hereinafter, "Erik") and Jesus Gerardo Hernandez's (hereinafter, "Jesus") motions to suppress evidence (D.E. 17, 19). The Defendants are charged by indictment with the offenses of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine (D.E. 12). The methamphetamine was discovered and a subsequent confession was obtained as a result of an immigration inspection of a personal vehicle at a border patrol checkpoint. The issue is whether Border Patrol agents acted outside of Fourth Amendment parameters when they conducted a search of the vehicle using a backscatter[1]. For the reasons set out below, the motions are **GRANTED**.

### FACTS

On October 30, 2014, at 9:22 a.m., Erik, with his brother Jesus as a passenger, drove a black Dodge Durango up to the United States Border Patrol checkpoint located near Sarita, Texas. Border Patrol Agent Matthew Crews questioned the Defendants about

---

[1] A backscatter search is executed when a vehicle containing x-ray equipment drives around a vehicle and produces an image.

their immigration status and travel plans.  Based on his observations and the Defendants'
responses to his questions, Agent Crews asked for, and received, verbal consent to look
in the back of the vehicle.  Agent Crews and Agent Archie Buchanan conducted a visual
search and a canine non-intrusive free air sniff around the vehicle.  The canine did not
alert and no contraband was detected.   At 9:25 a.m., Agent Crews asked for, and
received, verbal consent to conduct "a canine search of the vehicle to investigate further"
to take place in the secondary area.  Agent Crews did not mention nor seek consent for a
backscatter search of the vehicle.

At 9:28 a.m., after Defendants pulled into the secondary inspection area, an
unidentified agent approached them and instructed them to exit their vehicle and to enter
a waiting area.  The waiting area consisted of an enclosed room with at least three armed
agents present.   Agent Aurelio Valdez testified that the Defendants were "temporarily
detained" while he questioned them in the enclosed waiting area.  Another agent took
possession of the Defendants' identification cards in order to run background checks on
them and on the vehicle.  All background checks came back clear.

At 9:44 a.m., Agent Buchanan began the canine search of the interior and exterior
of the vehicle.  He did not find any contraband and the canine did not alert during the
inspection.  Nevertheless, due to the various natural voids in this type of vehicle and to an
unusual amount of dirt found between the vehicle's metal roof and its interior cloth,
Agent Buchanan concluded that "it would be much easier" to perform a backscatter
search of the vehicle.

Agent Buchanan testified that he did not rely on probable cause for the backscatter search, but rather on consent to search given by Defendants. He testified, "we always ask for consent for the backscatter . . . unless we've already found something in the vehicle." He testified that he typically has another agent get consent to search the vehicle with the backscatter. Agent Buchanan was unable to identify the agent he asked to get consent from the Defendants and was unable to confirm that such consent was requested.

Agent Valdez, who remained in the secondary waiting area with the Defendants, testified that he was present when Defendants gave consent to the backscatter search. However, he was unable to identify the agent who requested consent, how the request was phrased, and how the Defendants replied.

At 9:50 a.m., agents gave Defendants their identification cards and keys back, and instructed them to drive the vehicle to the backscatter area located 50 to 75 yards from the secondary area. A videotape (without audio) of the event shows an agent gesturing toward the backscatter area as the Defendants begin to walk toward their vehicle. The backscatter search revealed anomalies in the vehicle's door panels. Agents searched the door panels and found fourteen (14) tape-wrapped bundles containing a substance that tested positive for methamphetamine.

At 10:30 a.m., Border Patrol agents placed the Defendants under arrest, and read them their *Miranda* rights. Subsequently, Defendants made multiple inculpatory statements.

## APPLICABLE LAW

"It is well established that Border Patrol agents stationed at a permanent checkpoint site may stop a vehicle, question its occupants about citizenship, and conduct a visual inspection of the vehicle without any individualized suspicion that the car or its occupants are involved in criminal activity." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003) (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-62 (1976)). However, the Fourth Amendment prohibits a search of the vehicle without a warrant except in two instances—"[t]he agents must have either the consent of the owner to conduct the search or probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Id.* (citing *United States v. Ross*, 456 U.S. 798, 809 (1982)). At a suppression hearing, the Government bears the burden of proving by a preponderance of the evidence that the Fourth Amendment has not been violated. *United States v. Matlock*, 415 U.S. 164, 177-78 (1974); *United States v. Hurtado*, 905 F.2d 74, 75 (5th Cir. 1990).

## DISCUSSION

Defendants concede that Erik consented to a search of the back of the vehicle in the primary lane and to a canine search in the secondary area. However, Defendants argue that the agents failed to request consent for the backscatter search. The Government argues that Erik's consent to the canine search and his subsequent actions constituted "general consent", and thus the backscatter search was within the scope of the consent given.

### A. Scope of Second Consent

"When the government relies upon consent as the basis for a warrantless search, they have no more authority than they have apparently been given by the consent." *Mendoza-Gonzalez*, 318 F.3d at 666-67 (citation and internal quotation marks omitted). "The standard for measuring the scope of a suspect's consent . . . is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  According to Agent Crews' testimony, he clearly limited the scope of consent to a search of the inside of the vehicle with a canine.  Agent Crews' phrasing—seeking consent to conduct "a canine search of the vehicle to investigate further"—was unambiguous and leaves no room for interpretation.

The Government relies on *Mendoza-Gonzalez* in arguing that "[a] failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the initial consent."  318 F.3d at 670.  In *Mendoza-Gonzalez*, the Fifth Circuit reviewed the scope of law enforcement officials' general request to "take a look in the back" of a trailer and whether this phrasing could be reasonably interpreted as general consent to open boxes found in the back of the trailer.  *Id.* at 665.  The court held that the consent to take a look inside the back of the trailer gave the officers authority to open the boxes, reasoning that defendant "chose not to place any explicit limitations in his response to their general request, which, in this Circuit, is evidence of general consent."  *Id.* at 667.

Here, Agent Crews did not make a general request and Defendants did not give general consent to search the vehicle.  The consent granted was bound in scope by the consent sought—a canine search of the inside of the vehicle.  This conclusion is supported by the fact that Agent Buchanan, after finishing the canine search of the vehicle, asked another agent to get consent from Defendants before conducting the backscatter search.  Consequently, this Court finds that the Government did not meet its burden of showing that the scope of the second consent included a backscatter search of the vehicle.

### B.  Verbal Consent to the Backscatter Search

Defendants argue that Border Patrol agents did not request their consent to search the vehicle with a backscatter.  Agent Buchanan testified that he asked another Border Patrol agent to obtain that consent, but he was unable to identify the agent and was unable to confirm that the agent requested consent.  Although Agent Valdez testified that he was present when Defendants gave consent for the backscatter search, he was unable to recall which agent requested consent and what was said by the agent and the Defendants.  More importantly, the Government failed to identify and to offer the testimony of the agent who purportedly sought and obtained the consent.

Based on this record, the Court finds that the Government did not meet its burden of showing that agents requested and obtained the Defendants' consent to the backscatter search.

## CONCLUSION

The Court finds that the Government has failed to prove by a preponderance of the evidence that the Border Patrol agents requested and obtained consent from the Defendants to conduct a backscatter search.  Consequently, Defendants' motions to suppress evidence (D.E. 17, 19) are **GRANTED**.  The Court does not find it necessary to address Defendants alternative arguments—that the duration of the immigration stop violated the Fourth Amendment, and that the consent, if given, was not voluntary.

ORDERED this 10th day of February, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE